MICHAEL JAY GREEN          4451
345 Queen Street, Second Floor
Honolulu, Hawaii  96813
Telephone No.:  (808) 521-3336
Facsimile No.:  (808) 566-0347
Email:  michaeljgreen@hawaii.rr.com

EARL I. ANZAI          2904
345 Queen Street, Second Floor
Honolulu, Hawaii  96813
Telephone No.:  (808) 521-3336
Facsimile No.:  (808) 566-0347

ROBIN MELCHOR          7616
Five Waterfront Plaza, Suite 330
500 Ala Moana Boulevard
Honolulu, Hawaii  96813
Telephone No.:  (808) 523-1332
Fax No.:  (808) 526-2275

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| JORDAN GRIFFIN and CHERYL PERDUE,<br><br>           Plaintiffs,<br><br>vs.<br><br>JTSI, INC., UNITED STATES; and DOE DEFENDANTS 2-10,<br><br>           Defendants. | CIVIL NO. CV08-00242 ACK LEK<br><br>PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT JTSI, INC.'S **SECOND MOTION FOR SUMMARY JUDGMENT**; CERTIFICATE OF SERVICE<br><br>Date:  July 27, 2009<br>Time:  10:00 a.m.<br>Judge:  Alan C. Kay<br><br>Trial date: January 12, 2010 |

# PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT JTSI, INC.'S SECOND MOTION FOR SUMMARY JUDGMENT

Defendant JTSI, Inc.'s Second Motion for Summary Judgment on Counts I (Violation of Hawaii Whistleblowers' Protection Act) and II (Wrongful Termination in Violation of Public Policy) must again be denied.

## I. INTRODUCTION

Defendant **JTSI, INC.** ("JTSI") again asserts: (a) Counts I and II are state law claims that are preempted by the federal common law government contractor defense; and (b) JTSI did not terminate Plaintiffs because they reported alleged security violations, but because the United States ("US") ordered Plaintiffs' removal from the facility and there were no other positions at JTSI to which Plaintiffs could be transferred. *Def.'s Motion at 2*.

There are no "newly discovered" facts to support this renewed Motion. In fact, the "newly discovered" facts JTSI relies on only create more genuine issues of material fact. JTSI mistakenly asserts the "new evidence" will show: (1) the US had the exclusive authority to operate and manage the military facility where Plaintiffs worked, including the authority to direct their removal from the facility; (2) the US had thoroughly investigated Plaintiffs' claims; and (3) the US requested Plaintiffs' removal because their continued complaints demonstrated to the US they could not be trusted, and their untrustworthiness threatened the security of the facility. *Def.'s Memo. at 2*. The "new evidence" **DOES NOT** support JTSI's claims and the Motion must be denied.

First, the new evidence does not show the US had the exclusive authority to operate and manage the military facility where Plaintiffs worked, including the authority to direct their removal from the facility. This Court, upon review of the Prime Contract and Subcontract, has already concluded there was no specific provision in the Prime Contract or Subcontract allowing the US to direct the removal

of employees of the Contractor or Subcontractor. *See Order filed 11/6/08 at footnote 26 at 26.* Furthermore, Lee Hayashi ("Hayashi") admitted that according to the Subcontract, he would not talk to SAIC, the prime contractor, to remove a VCC operator. *Ex. "5", excerpts from the Deposition of Lee Hayashi taken on March 6, 2009 at 54:4-55:10. ("Hayashi at __ : __").* In addition, this Court found that if the US wanted "JTSI to correct faulty services under the contract, the government, through its contracting officer, was required to make an official cure notice to JTSI, which it did not do." *See Order at footnote 26, at page 27.* Hayashi corroborated this Court's finding when he testified that if he had a problem with the performance of the contract by JTSI, Hayashi would notify the contracting officer that JTSI was in default and ask the contracting officer "to take whatever actions that they will take." *JTSI's Ex. Q at 33:15-21.* Thus, it is irrelevant Hayashi "believe[d] it was [in his] discretion" to tell the contractor or subcontractor that a person was **not welcome** in the VCC, because such action was inappropriate. *JTSI's Ex. Q at 25:2-11.*

Second, the new evidence does not show the US thoroughly investigated Plaintiffs' claims. According to Hayashi, an investigation[1] was conducted after receiving from Ginger Parales, PACOM Inspector General ("IG") on March 8, 2005, a complaint filed by Lucille Alexander, a former employee, which was similar to Plaintiffs' complaints about Tominaga and her ex-husband Baker. *See Ex. 6, Dec. of Lee Hayashi dated March 31, 2009 at ¶8 at 4 to the Motion to Dismiss of Defendant United States ("Hayashi Dec.").* The investigation consisted of reviewing the past four (4) months of VCC videotapes. *Hayashi Dec. at ¶9 at 4.* After review of the videotapes, Hayashi concluded that Tominaga had violated the rules by allowing Baker to sit behind the desk and access the computer, but that the violation had not

---

[1] Hayashi admitted that this investigation was the first he conducted. *Ex. "5", Hayashi at 135:21 - 136:4; 140:25 - 141:13.*

resulted in a security breach. *Hayashi Dec. at ¶13 at 5-6*. Since there were no rules reduced to writing or clearly announced regarding visitors, Hayashi issued Tominaga a warning. *Id*. Hayashi then went on leave from March 16 - 27, 2005. *Hayashi Dec. at ¶14 at 6*. The video surveillance tape Plaintiffs' obtained showing Baker accessing confidential information by inputting a password on the classified computer **and checking in military officers**[2] at the PACOM building, however, **occurred on or about March 19, 2005**, after Hayashi was out on leave. *See Ex. 1 at 7; See Ex. 7, Dec. of Jordan Griffin dated July 9, 2009 at ¶4 ("Griffin Dec.")*. The tape Plaintiffs obtained, which Hayashi admitted he did not view, could not be a copy of the DVD Hayashi made since the breach complained of occurred on or about March 19, 2005 while Hayashi was out on leave. *Hayashi at 115:15-17; See Ex. 8, a note entitled "MFR of 20APR 05" signed by Ginger O. Parales, Assistant IG*. Thus, the US did not thoroughly investigate Plaintiffs' claims.

Finally, the assertion that Plaintiffs' removal was because the Plaintiffs could not be trusted, and their untrustworthiness threatened the security of the facility is outrageous. JTSI previously asserted that Plaintiffs' termination was justified because the US determined that Plaintiffs presented "security concerns" and relied on Ron Jarrett's (VP of JTSI) self-serving deposition testimony claiming Hayashi told him to terminate Plaintiffs because "there were some security problems." *JTSI's Ex. P at 54:5-11*. When further questioned about what those security problems were, Jarrett said he could not elaborate because he did not know. *Id*. Instructively, Hayashi's 3/31/05 email to Jarrett requesting Plaintiffs be terminated does not mention "security concerns." *JTSI's Ex. I*.

---

[2] Hayashi admitted that he did not see Baker handing out badges to military personnel from behind the desk. *Hayashi at 97:1 - 8*. The reason Hayashi did not see Baker handing out badges is because the 3/19/05 incident occurred while Hayashi was out on leave.

Now JTSI, based on Hayashi's testimony[3], is claiming Plaintiffs were removed because they could not be trusted and that their untrustworthiness threatened the security of the facility. However, Hayashi's reason for Plaintiffs' removal was made on a false assumption -- that the complaints made by Plaintiffs were the same allegations made by Alexander. *Hayashi at 115:3 - 7*. They are not.

Hayashi had no problems with Plaintiffs' duty performance. *Hayashi at 171:14 - 15*. Thus, the only issue Hayashi had with Plaintiffs was premised on a false assumption that the Plaintiffs were reporting the same complaint (i.e. Alexander's complaint to the IG) he told them at the March 29, 2005 meeting he had already investigated and had found the allegations could not be substantiated. *Hayashi at 172:1 - 173:21; JTSI's Ex. T*. Hayashi stressed several times that trust was a big deal to him - "I have to absolutely have the assurance that you're doing the right thing and that I have to -- I don't have to lie awake in bed at night wondering are we letting the wrong guys in the building." *Hayashi at 31:14:19*. Yet, Hayashi, who said he had no problems with Plaintiffs' performance, never said that he was worried Plaintiffs would let the "wrong guys in the building." Thus, the "trust issues" Hayashi had problems with were Plaintiffs' persistent complaints.

## II. BACKGROUND

Plaintiffs were employed by JTSI as Visitor Control Center ("VCC") Technicians. *See Ex. 1, Dec. of Cheryl Perdue dated January 18, 2007 in support of Plaintiffs' Memorandum in Opposition to Defendant JTSI, Inc.'s Motion for Partial Summary Judgment filed on January 18, 2007 in Civil No. 05-1-1618-09 (VSM)*. Plaintiffs were responsible for providing physical and informational security support to United States Pacific Area Command ("PACOM") clients and visitors. *Ex. 1 at 3*.

---

[3] Hayashi admitted that the Plaintiffs were terminated because he did not trust them. *Ex. "5", Hayashi at 95:25 - 96:2*.

Prior to March 24, 2005, Perdue informed JTSI HR Manager Ginger Jacobs about her concerns that a fellow co-worker Faith Tominaga and her boyfriend Sam Baker were committing security violations in the PACOM building. *Ex. 1 at 4.* Perdue also reported the serious security violations to Dana Oania, the new JTSI HR Manager. *Ex. 1 at 5.* Perdue was concerned because the classified computer system contained confidential information such as names, birthdates, and social security numbers, and that she heard Baker just got out of prison. *Ex. 1 at 6; JTSI's Ex. M p. 108:11-13; JTSI's Ex. F, p. C00560.*

Perdue secured a copy of the video surveillance tape showing Baker, on or about March 19, 2005, accessing confidential information by inputting a password on the classified computer and checking in military officers at the PACOM building. *Ex. 1 at 7; Griffin Dec. at ¶4.* Baker and other friends of Tominaga were also unescorted and entered the VCC's secured areas. *Ex. 1 at 8.* Perdue showed the tape to Griffin. *JTSI's Ex. M, p. 86:1:21.* Griffin concurred that the actions of Tominaga and Baker constituted a serious security violation. *Id.; JTSI's Ex. L, pp. 57:8 - 58:15.* In fact, Jarrett agreed the actions of Tominaga and Baker constituted "a reportable incident under the contract." *Ex. "2", excerpts from the Deposition of Ron Jarrett taken on February 27, 2007 at 33 - 35 ("Jarrett at __:__").* On the other hand, Hayashi, under the false assumption that Plaintiffs' complaints were the same complaint as Alexander, does not think Baker's conduct should have been reported. *Hayashi at 122:20 - 25.* Hayashi, however, admitted that if he did see Baker handing out badges, he would have further investigated to see what badges were given. *Hayashi at 123:6 - 124:11.*

On or about March 25, 2005, Griffin showed Heather Payne, the Assistant Security Officer for PACOM, the video evidencing the security breach at the PACOM building since Hayashi was out on leave. *JTSI's Ex. L, pp. 57:16 - 58:15.* Payne told

Griffin she would discuss the security breach with Hayashi, the PACOM Security Officer. *Id. at 58:19 - 59:9.* At no time did Payne tell Griffin that she and Hayashi had already conducted an investigation regarding a similar complaint made by Lucille Alexander nor was Griffin aware of any complaint made by Alexander. *Ex. 7, Griffin Dec. at ¶8.* Perdue also had a conversation with Payne about the video and wanted to have a meeting with Jarrett to discuss the security violations. *JTSI's Ex. M, pp. 84:12 - 85:12.* Payne told Perdue that Hayashi was "going to get a meeting together with all of us with Ron Jarrett." *Id.*

On or about March 29, 2005, Hayashi called a mandatory meeting with Jarrett and all VCC personnel. *Ex. 1 at 13.* During the meeting, Hayashi addressed security breaches and stated the employee's actions constituted a direct violation of security policy, which was grounds for immediate termination, however, that was not going to happen. *JTSI's Ex. L, pp. 61:25 - 62:23; JTSI's Ex. M, pp. 88:1 - 89:7.* Because Hayashi never mentioned any names at the meeting, Griffin thought the security breaches Hayashi was talking about addressed the complaint the Plaintiffs recently reported. *Griffin Dec. at ¶11; JTSI's Ex. T.* Hayashi, however, was addressing the security breaches in response to Alexander's complaint. *JTSI's Ex. T.* Hayashi failed to investigate Plaintiffs' complaints. *Hayashi at 134:7 - 135:7.*

Also during the meeting, Hayashi stated that those who are doing the right thing or think they are doing the right thing by reporting the security breaches should look at the bigger picture; that this job is not for everyone; and if you cannot look the other way and be a team player, you should seek employment elsewhere. *Def.'s Ex. L, p. 119:13-21; Def.'s Ex. N at 9- 12, ¶ 19.* Jarrett confirmed Hayashi stated this job may not be for everyone. *Jarrett at 67:2-12.*

According to JTSI, PACOM's internal visitor policy allowed employees to have visitors at the VCC. *Def.'s Memo. at 9.* In fact, Hayashi stated they "let a lot

of people in [the] building who are convicted of crimes like" moral turpitude, and truth and honesty. *Hayashi at 113:11 - 14.* The VCC, however, in January 2005, increased its security status to Top Secret due to "recent changes and increased security issues that have evolved within Building 700 and the VCC." *Ex. 3, Memorandum from JTSI to all VCC Personnel dated January 11, 2005 regarding Contract Requirement: Top Secret Clearance.* Because of this change in security status, the government directed JTSI to obtain Top Secret security clearance for all VCC Personnel. *Id.* In its Request for Personnel Security Investigation applications for Top Secret security clearances, JTSI states the following reason for access to classified material:

> "LOCATION IS GOING TOP SECRET ACCESS TO ALL AREAS. VISITOR CONTROL IS RESPONSIBLE FOR ISSUING BADGES TO VISITORS, **ESCORTING VISITORS AS NECESSARY TO ALL AREAS WITHIN BUILDING.** VISITOR CONTROL WILL VIEW INFORMATION AT THE TOP SECRET LEVEL ON OCCASION AS REQUIRED BY THE GOVERNMENT CLIENT."

(Emphasis added.) *Ex. 4, Request for Personnel Security Investigation for Jordan Kristopher Griffin rated January 31, 2005.* Yet, JTSI allowed Baker and others to walk around the PACOM building unescorted and uncleared. *JTSI's Ex. L, pp. 57:16-58:15.* Jarrett did not dispute that if someone was allowed to walk in the building without a badge and walk down the hallway, unescorted, it was possible for that individual to have access to the entire building. *Jarrett at 74:4 - 75:25.*

Realizing Hayashi was not going to take any action to address the serious security violations, Plaintiffs and Travis Goodwin expressed their concerns to Jarrett after the meeting, and told him they had proof of said security breach on video. *Ex. 1 at 16.* VP Jarrett was not interested in Plaintiffs' complaints about the security breach incident and referred them to the HR Manager. *Id. at 17.* Immediately thereafter, Griffin scheduled a meeting with the Oania. *JTSI's Ex. L, p. 110:9 - 13.*

After the March 29, 2005 mandatory meeting, Griffin also told the assistant to the deputy commander of PACOM (Lt. Schnaproff - Hayashi's superior officer) about the meeting and Hayashi's reaction about the security breach. *JTSI's Ex. L, p. 119:14-24*. Lt. Schnaproff said he would investigate the security issues and get back to Griffin. *Id.* Griffin reported the incident to Lt. Schnaproff because he believed he was the next person above Hayashi as required pursuant to USPACOMINST 500.1 dated 5 May 2004, which Hayashi admitted applied to the VCC technicians.[4] *Id. at 121:20-22; Hayashi at 46:9 - 47-7*. In fact, Hayashi admitted that if someone believed he was involved in a breach, he did not care who the person told as long as they told someone. *Hayashi at 174:24 - 175:15*.

On or about March 30, 2005, Perdue also reported the security breaches to the ARMY Criminal Investigations Division (1st Sgt. Ahn) for guidance because she did not know who else to go to or what other steps she needed to take. *Ex. 1 at 18; JTSI's Ex. M, p. 92:4-13*. Sgt. Ahn concurred it was a serious incident but could not help her because the violation occurred on a Navy installation and referred her to Naval Criminal Investigative Service ("NCIS") Kenny Wheeler. *JTSI's Ex. M, p. 93:10-14*. Wheeler also agreed it was a serious situation but said it was the Provost Marshal

---

[4] USPACOM INSTRUCTION 8500.1 dated 5 May 2004, entitled "U.S. Pacific Command Information Assurance Program (IAP)", Chapter 3, Computer Network Defense (CND), Section 3-10, Actual / Potential Compromise of Classified Information, a. Policy, subsection (3), provides in relevant part:

> (3) **Anyone who becomes aware of a possible or suspected compromise shall report it to their organization head immediately. If there is reason to believe that the organization head or security manager is involved, report to the next higher headquarters security manager.**
>
> (a) In all cases, reporting of suspected or possible compromise will be accomplished using the most secure means. Strict need to know limitations will be implemented.
>
> (b) In all cases of possible or suspected compromise of classified information, the organization security manager will be notified without delay. Based upon the type of classified or sensitive information and the media involved, the security manager will notify other appropriate security and/or counterintelligence officials.

(Emphasis added).

Office ("PMO") jurisdiction and proceeded to contact PMO for Perdue to let them know what was going on. *Id. at 94:10-17.*

On or about March 31, 2005, Wheeler, after talking to PMO, advised Perdue that the matter had been referred to Guy Dunan of the PACOM Security Office. *Id. at 95:9-12.* Perdue was informed by Wheeler that the PMO's procedure was to call Guy Dunan, since he was in charge of security, to let him know what was going on. *Id. at 95:13-20.* Perdue, however, was not comfortable with referring the matter back to the PACOM Security Officer, especially since she believed Dunan knew Hayashi. *Ex. 1 at 23.* Reluctantly, Perdue contacted Dunan, who confirmed he received the call from PMO, but he did not want to discuss it. *JTSI's Ex. N at 97:9 - 98:20.*

The next day, April 1, 2005, Oania informed Plaintiffs they were being terminated. *Ex. 1; JTSI's Ex. L, p. 48:5-49:16; JTSI's Ex. M, p. 100:5-16.* Jarrett testified Hayashi gave no reason as to why he requested Plaintiffs be terminated except that it was for "security reasons". *Jarrett at 63:14-18.* Plaintiffs later learned JTSI hired replacements for them. *Ex. 1.* But for Plaintiffs' reporting of the security violations at the PACOM building to Hayashi's superiors, Plaintiffs would not have been terminated from JTSI.

III. STANDARD OF REVIEW

> The purpose of summary judgment is to identify and dispose of factually unsupported claims and defenses. See <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Summary judgment is therefore appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." <u>Fed.R.Civ.P.56(c)</u>; <u>Querubin v. Thronas</u>, 107 Haw. 48, 56, 109 P.3d 689, 697 (Haw. 2005).
>
> \*         \*         \*
>
> The moving party has the burden of persuading the court as to the absence of a genuine issue of material fact. <u>Celotex</u>, 477 U.S. at 323.

> The moving party may do so with affirmative evidence or by "'showing - - that is pointing out to the district court - that there is an absence of evidence to support the nonmoving party's case." Id. at 325. All evidence and reasonable inferences drawn therefrom as considered in the light most favorable to the non-moving party. See, e.g., T.W. Elec. Serv. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630-31 (9th Cir. 1987). So, too, the court's role is not to make credibility assessments. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Accordingly, if "reasonable minds could differ as to the import of the evidence," summary judgment will be denied. Id. at 250-51.

White v. Sabatino, 415 F. Supp.2d 1163, 1168-69 (D.Haw. 2006).

"Legal memoranda and oral argument are not evidence and do not create issues of fact." Id. at 1169, fn.3 (Quoting British Airways Bd. v. Boeing Corp., 585 F.2d 946, 952 (9th Cir. 1978)).

IV. ARGUMENT

There are no "newly discovered" facts to support the renewal of this Motion. The government contractor defense still does not apply in this case. JTSI again cites to Yearsley and Boyle, which are distinguishable because the injuries suffered in those cases resulted from the contractors' compliance with government specifications during execution of performance of a contract with the government, which is not the case here. This Court found that "the government contractor defense is limited in its application to suits where precise government specifications as to the subject of the contract exist, and those specifications are the subject of the suit." *See Order at 31.* Here, the termination of Plaintiffs was not based on JTSI's failure to comply with government specifications. Instead JTSI is now claiming the termination was based on JTSI complying with Hayashi's "discretionary decision" to remove Plaintiffs. However, Hayashi's decision to no longer welcome Plaintiffs at the VCC because the Plaintiffs' "continued complaints about what they knew to be non-existent security

violations demonstrated their untrustworthiness, which threatened the security of the VCC and PACOM" was not true. *Def.'s Memo. at 20*. Since JTSI is unable to satisfy the first requirement, it is not entitled to receive the benefits of sovereign immunity.

  A. <u>The Government Contractor Defense Is Not Applicable To This Case</u>.

  The government contractor defense "protects a government contractor from liability for acts done by him while complying with government specifications during execution of performance of a contract with the United States." <u>McKay v. Rockwell Intern. Corp.</u>, 704 F. 2d 444, 448 (9th Cir. 1983). It is astonishing for JTSI to suggest that a "discretionary decision" to remove employees represent an area of "uniquely federal interest" in which the imposition of state tort liability on a private government contractor warrants preemption or that "Hayashi's instructions to remove Plaintiffs from working at the VCC constitute 'precise specifications'" entitling it to immunity. *Def.'s Memo. at 21*. This Court, applying the definition to the facts in this case, already concluded that Hayashi's request failed to meet the first requirement because it is not a precise specification. <u>See</u> *Order at 34-35*. Hayashi's request was not directly related to JTSI's performance of the Subcontract. On the contrary, Hayashi admitted he had no problems with Plaintiffs' duty performance. *<u>Hayashi</u> at 171:14 - 15*. Instead, Hayashi is claiming that the Plaintiffs could not be trusted because he mistakenly thought Plaintiffs were making complaints knowing they were false, and that their untrustworthiness threatened the security of the facility. *<u>Hayashi</u> at 172:1 - 173:21*. However, Hayashi's reason for Plaintiffs' removal (i.e. trust issue) was based on a false assumption -- that the complaints made by Plaintiffs were the same allegations made by Alexander. *<u>Hayashi</u> at 115:3 - 7*. As shown above, they are not.

  Hayashi stated several times that trust is a big deal for him - "I have to absolutely have the assurance that you're doing the right thing and that I have to -- I don't have to lie awake in bed at night wondering are we letting the wrong guys in

- 11 -

the building." *Hayashi at 31:14:19*. Yet, Hayashi, who said he had no problems with Plaintiffs' performance, never said that he was worried that Plaintiffs would let the "wrong guys in the building." Thus, Hayashi's trust issues were not related to Plaintiffs' job performance under the contract.

Furthermore, this Court noted that to allow "a request like Mr. Hayashi's to be characterized as a 'reasonably precise specification' would essentially absolve all government contractors from liability if they simply provided evidence that they were in some way acting at the government's instruction." *See Order at footnote 34, at 37*.

Additionally, this Court has already concluded that there was no specific provision in the Prime Contract or Subcontract allowing the US to direct the removal of employees of the Contractor or Subcontractor. *See Order at footnote 26 at 26*. The Subcontract instead requires the Contractor (JTSI) to replace or correct services or materials that at time of delivery failed to meet contract requirements. *JTSI's Ex. A*. However, the email from Hayashi does not even mention the desire to "correct services." *JTSI's Ex. I*. Hayashi also admitted that according to the Subcontract, he would not talk to SAIC, the prime contractor, to remove a VCC operator. *Hayashi at 54:4 - 55:10*. Thus, it is irrelevant Hayashi "believe[d] it was [in his] discretion" to tell the contractor or subcontractor that a person was **not welcome** in the VCC, because such action was inappropriate. *JTSI's Ex. Q at 25:2-11*.

According to Jarrett, Hayashi gave no reason as to why he requested Plaintiffs be terminated except that it was for "security reasons." *Jarrett at 63:14-18*. In fact, Jarrett testified he was not aware of any reason other than the reporting of the security violations as to why Plaintiffs were terminated because there is no evidence Plaintiffs did anything which prevented the subcontract to be carried out expeditiously. *Jarrett at 57:1-9*. Failure of JTSI to comply with Hayashi's request would not interfere, frustrate or conflict with federal contracting decisions.

Thus, the imposition of state law HWPA liability does not create a "significant conflict" with federal policy in an area of "uniquely federal" interest. There is ample evidence Plaintiffs were terminated in violation of the Hawai'i Whistleblowers' Protection Act. As in most cases emanating from wrongful termination a factual determination of the issues is compromised by the reality that the wrongful acts are not documented by the employer nor are they expected to be.

B.   JTSI Violated the Hawai'i Whistleblowers' Protection Act.

JTSI does not dispute that Plaintiffs were engaged in protected conduct under HWPA when they reported what they believed were security violations nor is JTSI disputing the fact that Plaintiffs' removal constituted an adverse action against Plaintiffs. The dispute, again, focuses on the third element of an HWPA claim - whether there is a causal connection between the alleged retaliation and the whistleblowing. *Order at 17-18*.

JTSI is claiming that the termination would have occurred regardless of the protected activity because "JTSI would have requested Plaintiffs' removal from VCC work anyway in order to comply with Hayashi's instruction." *Def.'s Memo. at 27*. However, JTSI does not provide any "newly discovered" facts. Instead, it appears that JTSI is just rehashing the same facts it raised in its first motion, for instance, that Goodwin also complained to JTSI and the government but JTSI did not terminate him and instead gave him a raise. Thus, JTSI has failed to meet its burden in showing that no genuine issues of material fact exist and this Motion must be denied.

In Crosby v. State of Hawaii Department of Budget & Finance, 76 Haw. 332, 876 P.2d 1300 (1994), the court stated:

> In order for an employee to prevail under the HWPA, however, the employer's challenged action must have been taken "because" the employee engaged in protected conduct in order to be considered "discriminatory" under the HWPA. In other words, **a causal connection**

> **between the alleged retaliation and the "whistleblowing" is required...**

(emphasis added).

Similarly, in Manteuffel v. City of North St. Paul, 1993 Minn. App. LEXIS 711, pp. 5-6 (1993), the court noted that in establishing a prima facie case, a whistle-blower must show: (a) she engaged in conduct protected under the act; (b) the employer took adverse action against the employee; and (c) there was a causal connection between the protected conduct and the adverse action. Causation may be inferred from evidence showing that the adverse action occurred shortly after the protected activity. See Miller v. Fairschild Industries, Inc., 885 F.2d 498, 505, *cert. denied*, 494 U.S. 1056, 108 L.Ed.2d 764, 110 S. Ct. 1524 (1990). Causation may also be inferred from the fact that management personnel engaging in an adverse employment decision are aware the employee has engaged in protected conduct. Id.

Discrimination may be shown indirectly, by showing through circumstantial evidence that the employer's proffered explanation is pretextual. Wrighten v. Metropolitan Hospitals, Inc., 726 F.2d 1346, 1354 (9th Cir. 1984) (citing Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 256, L.Ed.2d 207, 101 S. Ct. 1089 (1981)). Pretext can be also be shown by the inconsistent application of employer policy. Cohan v. Fred Meyer, Inc., 686 F.2d 793, 797 (9th Cir. 1982). Indeed, pretext is almost always proved by indirect evidence.

In Manteuffel, the court noted the burden of proof in a whistle-blower claim is the same as for a discrimination claim. The court also recognized "[t]iming of a discharge may raise an inference of retaliatory motives sufficient to meet the causal element of a prima facie case." Id.

The causal connection requirement has been divided into two stages: (1) the employee must make a prima facie showing that the "protected conduct was a

'substantial or motivating factor' in the decision to terminate the employee," and (2) once a prima facie showing is made, the employer must then "'defend affirmatively by showing that the termination would have occurred regardless of the protected activity.'" *Order at 19*.

This Court already found "given the close temporal proximity between Plaintiffs' reporting to outside government officials and their ultimate removal and termination, along with Defendant JTSI's alleged indifference toward Plaintiffs' complaints, and in viewing all the evidence and drawing all inferences in favor of Plaintiffs, see T.W. Elec. Serv., 809 F2d. at 630-31, a reasonable jury could infer that Plaintiffs were removed and terminated because of their attempts to report violations of government security procedures. *Order at 21*. Thus, Plaintiffs have made a prima facie showing that the protected conduct was a substantial or motivating factor in the decision to terminate them. Since JTSI failed to provide any "newly discovered" facts to negate the causal connection, JTSI is unable to satisfy its burden of showing that the termination would have occurred regardless of the protected activity.

C. <u>Plaintiffs' Wrongful Termination Claim is Valid</u>.

This Court has already determined, "[g]iven the clear legislative intent [regarding HRS § 378-69], Plaintiffs may properly raise their <u>Parnar</u> claim for wrongful termination in violation of public policy, even when that public policy is whistleblower protection under the HWPA." *Order at 41*. Since Plaintiffs' HWPA claim is valid for the reasons discussed above, Plaintiffs' wrongful termination claim is also valid.

V. <u>CONCLUSION</u>

For the reasons stated above and for other such reasons as may be presented at the hearing, Plaintiffs respectfully requests that this Honorable Court DENY JTSI's Second Motion for Summary Judgment.

DATED: Honolulu, Hawaii, July 9, 2009.

_____
MICHAEL JAY GREEN
EARL I. ANZAI
ROBIN MELCHOR
Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| JORDAN GRIFFIN and CHERYL PERDUE,<br><br>　　　　　Plaintiffs,<br><br>　vs.<br><br>JTSI, INC., UNITED STATES; and DOE DEFENDANTS 2-10,<br><br>　　　　　Defendants. | ) CIVIL NO. CV 08-00242 ACK LEK<br>)<br>) CERTIFICATE OF SERVICE<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## **CERTIFICATE OF SERVICE**

The undersigned certifies that a copy of the foregoing will be duly served after filing, by facsimile and by delivery or by mail, postage prepaid, on the following parties at their last known addresses:

(1)　TERRY E. THOMASON, ESQ.
　　　CORIANNE W. LAU, ESQ.
　　　SHANNON M. I. LAU, ESQ.
　　　Alston Hunt Floyd & Ing
　　　18th Floor, ASB Tower
　　　1001 Bishop Street
　　　Honolulu, Hawaii  96813

　　　Attorneys for Defendant
　　　JTSI, INC.

(2)     EDWARD H. KUBO, JR., ESQ.
       U.S. Attorney
       THOMAS A. HELPER, ESQ.
       Assistant U.S. Attorney
       Room 6-100, PJKK Federal Building
       300 Ala Moana Boulevard
       Honolulu, Hawaii  96850

       Attorneys for Defendant
       LEE HAYASHI / UNITED STATES

DATED: Honolulu, Hawaii, July 9, 2009.

_____
MICHAEL JAY GREEN
EARL I. ANZAI
ROBIN MELCHOR
Attorneys for Plaintiffs